JOHN WOOSTER, Plaintiff, *v.* JOSHUA A. S. BLISS, Defendant.

*Personal injuries to a coachman — driving horses without blinders, when contributory negligence on the part of the coachman.*

In an action brought to recover damages resulting from injuries received by the plaintiff which were caused, as alleged, by the negligence of the defendant, it appeared that the plaintiff was a coachman in the employ of the defendant; that his master had bought a pair of young horses which had been, for four or five weeks, under the care of the plaintiff who was an experienced horseman, thirty-five years of age; that the employer told the plaintiff that he wished

to go out driving, and that he wanted the blinders taken off the horses; that the plaintiff said that it was unsafe to drive the horses without blinders, but the defendant said that that made no difference as he was going to drive them himself, and he directed the plaintiff to bring the horses from the barn to the house at a certain hour; that while the plaintiff was attempting to do this the horses were frightened by the shining of the sun on the silver lamps of the carriage, and before reaching the house ran away, destroying the carriage and seriously injuring the plaintiff.

Upon the trial of the action the plaintiff was nonsuited.

*Held,* that, as the coachman entertained the opinion that it was unsafe to drive the horses without blinders, he should, under the circumstances, have declined to drive them; that, if he chose, he might have led them to the house;

That it could not be said that the employer had carelessly exposed the servant to a danger greater than that which the servant, in the exercise of due care, had reason to anticipate, nor that the employer had, by his superior knowledge or information, means of knowing or appreciating the probable danger, which were not possessed by the employee, and that the nonsuit was properly granted.

MOTION by the plaintiff, John Wooster, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance upon a nonsuit granted by the court after a trial at the Erie Circuit on the 2d day of October, 1894.

*Emory P. Close,* for the plaintiff.

*H. J. Swift,* for the defendant.

LEWIS, J.:

This action was brought to recover damages for injuries sustained by the plaintiff caused by the alleged negligence of the defendant. The plaintiff was thirty-five years of age when he received the injuries of which he complains. He had from his childhood been about horses and was familiar with their habits; he had worked as a coachman from twelve to fourteen years.

He had worked for the defendant in that capacity for thirteen months prior to the accident. The defendant purchased a team of western horses in the spring of 1892 at East Buffalo.

The plaintiff brought them from there to the defendant's barn in the city of Buffalo, and had charge of them, caring for and driving them as a coachman for four to five weeks before he was injured. They were young horses, high-spirited and somewhat fractious.

They had not been out of their stable for four or five days previous to the occurrence in question on account of the weather being inclement. They were kept in a barn at defendant's home in Buffalo. The plaintiff was called as a witness in his own behalf and gave the following account of what occurred at the time of the accident: "They (the horses) was in first-class condition I thought by the way they acted in the barn. * * * Mr. Bliss came to the barn about one o'clock, and he said, 'John, I want the team about half-past two on the two-seated surrey, and I want you to take off the blinders.' I said, 'Mr. Bliss, I don't think it is safe to take those horses out without blinders on.' He said, 'Never you mind. I want you to take off those blinders, I am going to drive this team myself. · All I ask of you is to bring the horses to the house when I ring to you.' I said, 'All right. It doesn't make any difference who is going to drive them; it is not safe.' He said, 'I will risk it. You bring out those·horses when I ring for· you to bring them out at half-past two.'

"I hitched the horses up and got into the surrey. My nephew pulled the door open and I drove the horses out. When they got beyond the shadow of the barn and the sun struck the carriage they jumped and got on a full run and I done all I could to hold them.

"They run out in front and run into a big elm tree. It was a two-seated surrey, with lamps on the side; silver mounted lamps with glass in, right by the forward seat. Could see the sun glinting on the silver when the horses started. As soon as we got in the sun it kind of glittered and the horses jumped. * * * Soon as they drove out there was a little curve to make, and they throwed their heads back and saw the carriage and they started. They run as fast as I ever rode in a carriage.

"One horse ran on one side of the tree and the other on the other side, and smashed the carriage up together.

"The horses got loose, and I found myself on the other side of the street. Threw me out of the carriage and broke my jaws on both sides."

The account thus given was uncontradicted, and at the close of the evidence the plaintiff was nonsuited. The question is whether upon these facts there was any question which should have been submitted to the jury. Upon the undisputed evidence the plaintiff

had a much better opportunity to know the habits and disposition of the horses than had the defendant. He had been with them daily for four or five weeks, handled and driven them. He was quite as competent, and probably more so, than the defendant was to judge as to the safety of driving them without blinders. He only consented to hitch them to the surrey upon the assurance of the defendant that he, and not the plaintiff, was to drive them. Plaintiff testified that he would not have driven them without blinders. We do not see upon these facts what question there was which should have been submitted to the jury.

We have examined the many authorities referred to in the brief of the plaintiff's counsel. Many of them were cases where servants were permitted to recover in actions against their masters for injuries sustained while performing work, which was apparently dangerous, by the direction of the master upon his assurance that it was safe so to do. It is a well-settled rule of law that employers are required to furnish their employees with reasonably safe appliances with which to perform the work he requires them to do; and if the employer carelessly exposes the servant to danger greater than the servant, in the exercise of due care, had reason to anticipate, or if the employer has, by his superior knowledge or information, means of knowing or appreciating the probable danger not possessed by the employee, the employer may be made liable for injuries sustained by the servant. It cannot be claimed with any propriety that this case comes within these rules of law. Whether it was probably safe to drive these horses without blinders was a matter of judgment based upon facts which, as we have seen, were better known to the plaintiff than they were to the defendant.

The plaintiff's experience with these horses and their habits, and his knowledge of horses generally, enabled him to form a more correct judgment in the matter than the defendant.

According to his own testimony he was not in much doubt about the danger. He felt quite certain that it was unsafe and dangerous to drive the horses without blinders. Entertaining that opinion he should have declined, under the circumstances, to drive them. He could, had he chosen so to do, have led them to the house instead of driving them.

It cannot, with propriety, be claimed that he was under any

coercion, for he testified that he would not have driven the horses without blinders. We are not aware of any reported case upon such facts as are here presented, where a party has been permitted to recover damages.

Statements may be found in some of the cases which seem to sustain the plaintiff's contention, but when examined they will be found to be easily distinguishable from this case.

The nonsuit, in our opinion, was properly granted.

The motion for a new trial should be denied, and judgment directed for the defendant on the nonsuit.

BRADLEY, WARD and DAVY, JJ., concurred.

Motion for new trial denied, and judgment directed for the defendant on the nonsuit.